FOREST PRESERVE DISTRICT OF DU PAGE COUNTY, Plaintiff-Appellee, v. WEST SUBURBAN BANK, as Trustee, *et al.*, Defendants-Appellants.

Second District   No. 2—92—1247

Opinion filed August 13, 1993.—Rehearing denied September 21, 1993.

Barclay & Damisch, Ltd., of Chicago (John W. Damisch, of counsel), for appellants.

Scott M. Day, of Helm & Day, of Naperville (David W. Krula, of counsel), for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The defendants appeal from a preliminary injunction prohibiting the development of their farmland into a parking lot. The injunction was granted on behalf of the plaintiff, the Forest Preserve District of Du Page County, which previously had filed a condemnation action to obtain the property. The defendants argue on appeal that (1) the injunction constitutes an unconstitutional judicial taking; (2) the injunc-

tion constitutes an equitable prejudgment attachment of property; (3) the plaintiff failed to prove the requisite elements necessary for injunctive action; (4) the trial judge abused his discretion in granting the injunction; (5) the injunction is unenforceable for vagueness; and (6) the injunction does not preserve the status quo.

On January 15, 1988, the plaintiff filed a condemnation action for the subject property, which was zoned industrial but which was being utilized as farmland. During May 1991, the defendants obtained a permit from the County of Du Page to develop 14 acres of the land into a parking lot. They intended to scrape up the topsoil, hauling it off the site, bring in approximately 45,000 cubic yards of clay from off-site properties, compact the clay, and place a granular surface over the clay. In October 1991, the defendants commenced development by scraping the topsoil off the permitted area and bringing some 5,000 cubic yards of clay onto the property. Allegedly, the plaintiff observed the activity on the property and obtained a temporary restraining order, which remained in effect by agreement until the commencement of the hearing of this matter on September 9, 1991. At that time, the defendants refused to consent to any further extension of the temporary restraining order. From the date of the condemnation filing until September 9, the parties were engaged in negotiations concerning the just compensation to be paid to the defendants for their land.

In the plaintiff's amended verified motion for a preliminary injunction, it alleged in part (1) that a condemnation lawsuit was pending between the parties; (2) that the purpose of the condemnation was to preserve the flora, fauna, and natural forests on the subject property; (3) that pursuant to the law of eminent domain of Illinois, the value of the property in question would be fixed as of January 15, 1988, the date the condemnation action was filed; (4) that the plaintiff has the right to have the property maintained as it existed on January 15, 1988, or as nearly status quo as possible; and (5) that the defendants' development was irrevocably altering the naturally occurring top soil, vegetation, topography, and drainage patterns.

At the hearing, there was testimony that the projected parking lot was estimated to cost the defendants $4,000 to $5,000. However, the cost for the plaintiff to correct the work already completed by the defendants was estimated to be approximately $240,000. If the project was completed, the cost to correct or return the parking lot into its preconstruction state would be $460,000. There was also testimony indicating that the harm to the soil, flora, fauna, and water characteristics of the land was irreparable.

In a September 18, 1992, order, following a hearing, the court granted the plaintiff's motion for a preliminary injunction. In that order, the court made the following findings. First, there was a likelihood of success in the outcome of the case for the plaintiff. The court noted that the plaintiff's right to obtain the property was undisputed, and that only the issue of the fair-market value remained to be decided. Second, the damage sustained by the defendants' development was irreversible, and the cost of restoration would exceed the cost of the original purchase price of the land. Third, the defendants' damage by the proposed injunction is less than the damage caused by allowing the parking lot to be built. The court lastly found that the plaintiff had no adequate remedy at law.

The court ordered the defendants "enjoined from any and all excavation, drainage, filling, dumping, compacting, construction or any other activity that damages or alters the soils, vegetation or topography on the subject property until further order of the court." The order, however, made exceptions to allow (1) farming and agricultural activities, as long as no trees were removed; (2) the performance of ordinary maintenance; and (3) erection of a soil erosion fence. The order additionally waived the necessity of a bond.

We first address the defendants' argument that the preliminary injunction constituted an illegal taking in violation of the United States and Illinois Constitutions. The plaintiff has done no more than to make the bare allegation that the issue of a judicial taking "is not ripe," with no citational support and no substantive response to the defendants' claim.

■ It has long been held that the right to take private property for public use is an attribute of sovereignty that is inherent· in the State. (*St. Louis Connecting R.R. Co. v. H.F. Blumberg* (1927), 325 Ill. 387, 392.) However, the Illinois Constitution prohibits a taking of property for public use without just compensation. (Ill. Const. 1970, art. I, §15.) A "taking" in this context has been defined as an actual physical invasion of the property (*La Salle National Bank & Trust Co. v. City of Chicago* (1984), 128 Ill. App. 3d 656, 667), or a radical curtailment of the use of an owner's property or ability to derive income from the property. *Towne v. Town of Libertyville* (1989), 190 Ill. App. 3d 563, 568, citing *Kirby Forest Industries, Inc. v. United States* (1984), 467 U.S. 1, 14, 81 L. Ed. 2d 1, 13, 104 S. Ct. 2187, 2196.

The purpose of a condemnation proceeding is to satisfy the constitutional and statutory requirements that property not be taken without due process of the law. (*Illinois Cities Water Co. v. City of Mt.*

*Vernon* (1957), 11 Ill. 2d 547, 551.) This right of eminent domain, codified in the Code of Civil Procedure, grants the authority by which the State and its agencies may obtain private property for public use. (See Ill. Rev. Stat. 1991, ch. 110, par. 7—101 *et seq.*) However, the right of eminent domain can only be exercised where such grant is specifically conferred by legislative enactment, and then only in the manner and by the agency so empowered. *Forest Preserve District v. City of Chicago* (1987), 159 Ill. App. 3d 859, 861.

■ The legislature, recognizing that the element of time is often an extremely important factor in eminent domain cases, and because many cases take a year or more before a final determination of compensation is made, enacted the "quick taking" provisions to expedite the taking. (*Department of Public Works & Buildings v. Vogt* (1977), 51 Ill. App. 3d 770, 776.) The purpose of a "quick-take" proceeding is to place possession and title in the State prior to the determination of just compensation, while protecting the interests of the landowner. (*Department of Public Works*, 51 Ill. App. 3d at 776.) In the absence of a "quick-take" proceeding, the title to the condemned property does not vest in the condemnor, and no rights of property are transferred until the conclusion of the eminent domain proceedings, including payment by the State to the landowner. See Ill. Rev. Stat. 1991, ch. 110, par. 7—103; see also *City of Crystal Lake v. La Salle National Bank* (1984), 121 Ill. App. 3d 346, 350.

■ Here, the plaintiff has not exercised or attempted to exercise a "quick-take." (See Ill. Rev. Stat. 1991, ch. 110, par. 7—103.) Rather, it attempted to obtain control over the defendants' land through the use of a judicial remedy, in a manner exceeding the authority granted to it by the legislature. (See Ill. Rev. Stat. 1991, ch. 110, par. 7—101; see also *Forest Preserve District v. City of Chicago*, 159 Ill. App. 3d at 861.) We therefore find that the injunction here constitutes an unconstitutional taking without just compensation under the Illinois Constitution (see Ill. Const. 1970, art. I, §15; *Libertyville*, 190 Ill. App. 3d at 568), and we therefore reverse the order of the court granting the injunction.

While we note that the Appellate Court, First District, case of *Forest Preserve District v. Mount Greenwood Bank Land Trust 5—0899* (1991), 219 Ill. App. 3d 524, contains facts which are nearly identical, it is not dispositive as to the case at bar. As noted by the defendants, the *Mount Greenwood* court did not address the constitutional issue of a "taking" with which we are faced here. To the extent that *Mount Greenwood* is in conflict, we reject the holding in that decision.

904

For the above reasons, we reverse the injunctive order of the court of Du Page County.

Reversed.

DOYLE and QUETSCH, JJ., concur.